ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
 I. INTRODUCTION
This matter was specially designated to this division of the court and is before the court on cross-motions for summary judgment. At issue are questions regarding the application of the Oregon inheritance tax. The material facts are not in dispute. In its brief in response to the cross-motion of Defendant (department) for summary judgment, Plaintiff (taxpayer) both questioned the propriety of the cross-motion and suggested that there remained material facts as to the fair market value of real property owned by William R. Pierson (the decedent) at the time of his death.
There was nothing improper about the cross-motion for summary judgment filed by the department. Such a motion is contemplated by the rules of the court and was made within the time limits of those rules. As to the existence of a material question of fact as to the value of property, the department has accepted the values for such property shown on the Form 706 *Page 2 
Federal Estate Tax Return (federal return) submitted by Plaintiff and in the record. No amendment to the federal return has been sought or approved. Further, at the hearing on this matter counsel for Plaintiff conceded that Plaintiff is not questioning the fair market value conclusions contained in the federal return. All other disputed matters in this case are questions of law and the relationship of federal and Oregon statutes.
 II. FACTS
The decedent died on January 1, 2003. (Ptf's Mot for Summ J at 1.) In the federal return the real property of the decedent was valued at $1,694,100. (Id., Ex 1.) On the federal return taxpayer made an election under Internal Revenue Code (IRC) section 2032A to have the farm property it owned valued at a reduced level — fair market value reduced by the maximum reduction of $840,000 available in 2003.[1] (Ptf's Mot for Summ J at 2.) The federal return of the taxpayer was audited. (Id., Ex 2.) The federal auditor determined that no federal estate tax was due, taking into account the auditor's factual determinations of value, the $840,000 reduction in value available under IRC section 2032A and the existence of an exemption equivalent of $1,000,000 available to the taxpayer under IRC section 2010, as in effect for 2003. This conclusion was evidenced by a closing agreement (the Federal Closing Document) in which a statement was made that, in the computation of federal tax, no amount of state death tax credit was taken into account. (Id., Ex 3.)
Taking into account all property of the decedent, and available deductions, the department determined that an Oregon inheritance tax of $26,767 was due. (Id., Ex 5; Def's X-Mot for Summ J at 2.) This amount was determined by calculating the maximum credit for state death taxes pursuant to IRC section 2011(b) as it, and other provisions of the IRC, existed on *Page 3 
December 31, 2000. This calculation was based on the values of estate assets that are not contested. The amount of tax resulting was then reduced to recognize that a small amount of estate real property was located in Montana. An assessment against the estate was made by the department.
 III. ISSUE
The issues presented are:
 (1) Do the provisions of the Oregon inheritance tax justify the tax assessed, and if so;
 (2) Does the Federal Closing Document neutralize or cancel the tax liability created by such assessment?
 IV. ANALYSIS
Taxpayer makes two arguments based on construction of the Oregon inheritance tax statutes. One argument is based on the provisions of ORS118.010 that define the amount of Oregon tax due as the "maximum amount of the state death tax credit allowable" under federal law.[2] The second argument concerns ORS 118.100 and its language that Oregon tax is payable on the date that federal tax is payable.[3] Taxpayer also argues that the Federal Closing Document conclusively determined the "maximum amount of state death tax credit allowable" in the determination of federal tax was zero. Taxpayer argues the Federal Closing Document defines the amount of tax due under ORS 118.010 and that, by reason of the Supremacy Clause of the United States Constitution, such determination cannot be challenged. These arguments will be addressed in order. *Page 4 
A. Construction of ORS 118.010: Amount of Federal Credit Allowable
Consideration of the relationship of the Oregon inheritance tax scheme and the federal estate tax scheme is important to the resolution of this case. A review of the Oregon inheritance tax statutes during the period important to this case, 2000 through 2003, indicates the following. The Oregon statutory provisions were "built upon" and can only be understood by reference to the provisions of the editions of the Internal Revenue Code (IRC) to which the Oregon statutes refer. Those provisions of the IRC are not necessarily the provisions contemporaneous with the corresponding Oregon statutes being applied to any given decedent. Thus, for example, the provisions of ORS 118.010 (1999) make reference only to the IRC, whereas the provisions of ORS 118.010 (2003), reflecting amendments made in 2003 (the 2003 amendments), make reference to the IRC "as amended and in effect on December 31, 2000." That difference is of substantial significance. The 2003 amendments had, as a primary purpose, linkage of the Oregon inheritance tax only to the IRC as in effect on December 31, 2000. ORS 118.007, ORS 118.009.[4]
The reason that the 2003 Oregon legislature "de-coupled" the Oregon inheritance tax system from the IRC as it had changed, and would continue to change, after 2000, is both clear and important to this case. In 2001, the estate tax provisions of the IRC were changed substantially. The first change relevant to this case was that the exemption level, the estate value *Page 5 
level below which no tax liability was due, was increased significantly at the federal level. The exemption level was increased, for the years leading up to 2010, from a minimum of $625,000 and a maximum of $1,000,000 to a minimum of $1,000,000 and a maximum of $3,500,000. The second change relevant to this case was that the amount of any otherwise allowable credit for state death taxes was reduced in 25 percent increments for the years 2001, 2002 and 2003 and totally eliminated after 2004.[5]
The 2003 Oregon legislature was presented with an existing Oregon inheritance tax system that was based on two fundamental features:
 (1) No Oregon tax liability would exist if application of federal estate tax credits, other than the IRS section 2011 credit for state death taxes, resulted in no tax due to the federal government; ORS 118.010(5)(2001); and
 (2) The Oregon inheritance tax was equal to the maximum state death tax credit allowable under the IRS. ORS 118.010(2)(2001).
Had the Oregon legislature taken no action following the changes in federal law in 2001, the result would have been:
 (1) The federal exemption level used in calculation of Oregon inheritance tax would have increased in lockstep with the federal exemption increases so that no Oregon tax would have been due unless, for deaths after 2001, the estate size had exceeded $1,000,000. For years after 2003, the exemption level would have followed the federal exemption up to $3,500,000 for deaths in 2009. For estates above those exemption levels there would have been some tax liability to Oregon, subject to the consequences described immediately below. However, for estates below the increasing exemption levels, the Oregon inheritance tax liability that had existed would have been eliminated.
 (2) The Oregon inheritance tax — defined as equal to the maximum state death tax credit allowable — would have decreased by 25 percent in 2002, 50 percent in 2003, 75 percent in 2004 and would have been eliminated for deaths occurring after 2004. IRC sections 2011(b)(2), and 2001(f)(2002). *Page 6 
 If the linkage to federal law had remained unchanged, the Oregon inheritance tax would effectively have been repealed as of December 31, 2004.
A review of the provisions of the 2003 amendments and the legislative history of that legislation leads to the inescapable conclusion that the Oregon legislature neither intended such results nor adopted provisions that accidentally caused such results. See Or Laws 2003, ch 806, § 1.[6]
What the legislature intended to do, and in fact did, was to immunize the Oregon inheritance tax system from the 2001 federal changes by:
 (1) Continuing, in ORS 118.010, the basic provision of making the Oregon tax due an amount equal to the maximum allowable amount of the credit for state death taxes under the IRC, but
 (2) Changing, in ORS 118.007, the version of the IRC to which reference is made in the Oregon statutes — so as to freeze calculation elements at December 31, 2000; and
 (3) Confirming in ORS 118.010(5) that the then existing rule, eliminating Oregon liability if there was no federal liability would apply only for decedents dying before January 1, 2003; Oregon would continue, pursuant to its statutes, to collect inheritance tax revenue even though the federal government had made the decision to forego such revenue.
The result, therefore, was to require a computation of the "maximum amount of the state death tax credit allowable" against the federal estate tax under section 2011 of the IRC, as it stood at December 31, 2000. To that calculation, and the position of the parties with respect to it, the court will now turn.
ORS 118.010 remained, before and after the 2003 amendments, unchanged with respect to the reference point: the "maximum * * * allowable" credit, under IRC section 2011, as a state death tax credit. ORS 118.010. Of central importance in this case is whether the word "allowable" can be read as meaning "allowed." It is taxpayer's position that "allowable" must be *Page 7 
read in this fashion. That position must be rejected for three reasons: (1) "allowed" and "allowable" are two different words with two separate meanings; (2) the federal law, to which the Oregon statute refers, treats the amount of credit "allowed" as opposed to that "allowable" as being two quite separate amounts; and (3) a construction of "allowable" as meaning "allowed" would frustrate the clear intentions of the Oregon legislature in the 2003 amendments.
The word "allowable" is defined as "permissible," whereas the word "allowed" is defined as "permitted." Webster's Third New Int'lDictionary 58 (unabridged ed 2002). Those definitions do not advance the cause very much. In the law of taxation, the terms can be and have been treated differently. Thus, for example, as to the calculation, for income tax purposes, of the basis of an asset, a reduction in that basis is made under IRC section 1016 for the amount of the depreciation "allowed" but in no case less than the amount "allowable." IRC § 1016(a)(2). The difference in the meaning of the two words is obvious from the somewhat tortured history of the language of IRC section 1016, nicely discussed in Boris I. Bittker and Lawrence Lokken, 2 Federal Income Taxation ofIncome, Estates and Gifts, section 42.3 (3d ed 2000). The two words address the possibility that a tentative calculation may provide for an allowable or permissible amount that, however, may be reduced by another limiting calculation.[7] As discussed below, that is exactly what occurs in the case of the federal credit for state death taxes paid.
Federal estate tax liability is computed by calculating a taxable estate, determining a tax and then deducting from that tax certain credits. Of importance here are two credits: (1) the credit for state death taxes under IRC section 2011; and (2) the so called "unified credit" under *Page 8 
IRC section 2010. The focus of ORS 118.010 is on the maximum amount of credit for state death taxes "allowable" under IRC section 2010. In turn, the maximum amount allowable under federal law is determined under IRC section 2011(b) and is a function of the taxable estate size. The language of IRC 2011(b) identifies this scheduled amount as a "maximum."[8] However, it is also clear that the result of the calculation may not be, at the end of the day, the amount "allowed." This is so because, under IRC section 2011(e), the amount of state death tax credit "allowed" may not exceed the amount of federal estate tax dueafter application of the "unified credit" available under IRC section2010. The unified credit is applied before consideration of the state death tax credit and the state death tax credit can only "zero out" tax liability — it is not "allowed" so as to produce a refund. In any case where the amount of federal estate tax remaining due after application of the unified credit is less than the maximum "allowable" state death tax credit, some lesser amount of that maximum credit will be "allowed."
Finally, if the court were to accept taxpayer's position, the amount of Oregon tax would not be determined under the edition of the IRC chosen by the Oregon legislature. That action of the federal auditor was taken because, under the federal auditor's calculations, and with application of the IRC as of 2003, there was no federal estate tax due after application of the "unified credit" available under IRC section 2010 and therefore the provisions of IRC section 2011(e) reduced the potentially "allowable" state death tax credit to zero. That is not what the Oregon legislature intended. With the 2003 amendments our legislature retained the concept of "allowable" federal credit and de-coupled the Oregon statutory scheme from ever increasing federal exemption amounts by freezing reference to exemption amounts to those in effect under federal law at the end of 2000. No later edition of the IRC is to be used. Taxpayer acknowledges *Page 9 
the goal of the legislature in the 2003 amendments but suggests the actions fell short of that intent. That argument finds no support in the Oregon statutes and their legislative purposes and history.
Further, if taxpayer's position is accepted, then for a death in 2003, the amount of Oregon inheritance tax could not have exceeded 50 percent of the credit amount calculated under IRC section 2011(b). For decedents dying after 2004, there would have been no Oregon inheritance tax. Those results would have been dictated by the provisions of IRC sections2011(b)(2) and 2011(f) which, added by amendment to the IRC in 2001 andtherefore not part of the IRC as in effect at the end of 2000, reduced the maximum allowable credit under IRC section 2011(b)(1) and terminated the allowance of any state tax credit for years after 2004. As demonstrated in the discussion above regarding the 2003 amendments, the clear intent of the Oregon legislature was to have the inheritance tax operate precisely without regard to the changes made in federal law after 2000.
Proof of the foregoing conclusion is easily available. If taxpayer's position is valid and the Oregon inheritance tax is only the amount ultimately "allowed" in the computation of the federal tax, then the actions of the 2007 Oregon legislature were, as to a whole chapter of session laws amending chapter 118 of the ORS, completely meaningless.[9]
Why? Because by 2007 the amount of state death tax credit that could be "allowed" under federal law was zero. IRC § 2011(f). *Page 10 
If the Oregon inheritance tax was effectively repealed, why did the 2007 Oregon legislature spend time and effort in that year to amend the provisions of ORS chapter 118? The answer, of course, is that the Oregon legislature never intended to suffer a repeal of the inheritance tax by operation of federal law changes.
The legislature did retain the existing statutory references in ORS118.010 to the maximum amount "allowable" under the IRC. However, given the fact that the legislature also "froze" the reference to the IRC as it existed on December 31, 2000, the legislature retained the mechanism whereby, as discussed above, a maximum allowable amount would be calculated. In addition, because the Oregon legislature had never concerned itself with any amount actually "allowed" by federal law, by reason of the actions of an auditor or otherwise, it did not need to concern itself with, or remain exposed to, the changes in federal law that would reduce to zero, in all cases, the amount "allowed."
Taxpayer seeks after the world that existed until the day before the death of the decedent. Until the 2003 legislature limited its application to decedents dying before January 1, 2003, ORS 118.010(5) provided that if the taxpayer had no federal tax liability after application of federal credits, other than the credit for state death taxes, there would be no Oregon tax liability. Stated differently and in the fashion that actually occurred for this estate, if there was no federal estate tax liability after application of the federal "unified credit," there would be no Oregon inheritance tax liability. However, decedent died on January 1, 2003, and was denied the benefit of that statutory rule that had expired the previous day. Taxpayer's arguments based on the construction of the words "allowed" and "allowable" must be rejected. *Page 11 
B. Construction of ORS 118.100: Date Federal Tax Payable
Taxpayer makes another construction argument, similar in linguistic terms. The major premise in this argument is that the provisions of ORS118.100 require that an Oregon tax be paid only when a federal tax is payable. Taxpayer observes that it has no federal tax to pay, at least at this point in time.[10] Taxpayer then concludes that it, therefore, can have no Oregon inheritance tax to pay. The fallacy in the logic of taxpayer is obvious from the discussion above regarding the 2003 amendments. Those amendments were made so that, even when no federal tax liability existed, an Oregon inheritance tax liability could exist.
Nor does the language of ORS 118.100 support taxpayer's argument. ORS118.100 provides that "[t]he tax provided for in ORS 118.010 shall be paid to the Department of Revenue on the date the federal estate tax is payable." The time "the federal estate tax is payable" could mean a due date generally, without regard to the existence of any particular liability. That would be, under IRC section 6075, nine months after the date of death. The language could also mean the date on which an actual federal tax liability of the estate in question is due and owing. Under this construction, if no federal tax liability existed, there would be no date for payment. Such a result was perfectly sensible in the years prior to 2003 because, in those years, there would be no Oregon tax liability unless there was federal tax liability after application of the unified credit under IRC section 2011. ORS 118.010(5)(2001). That cannot be the construction given to ORS 118.100 after the 2003 amendments because there will be cases under those amendments where, for the reasons discussed above, an Oregon tax will be due even though no federal tax is due. This second construction cannot have been the intent of the legislature when, in 2003, it *Page 12 
created a world in which Oregon tax might well be due even though there existed no federal tax liability. The legislature left the provisions of ORS 118.100 on date of payment unchanged in 2003.
However, as with the provisions of ORS 118.010 discussed above, particular statutes may remain unchanged while their operation is altered by changes to other statutes in a statutory system. The context in which the word "payable" finds itself is one in which, in many cases, there will be an Oregon liability even though there is not a federal liability. That fact requires that the date "payable" be the date described in IRC section 6075, namely, nine months after the date of death. This construction of ORS 118.100 permits it to coexist with the 2003 amendments without rendering either illogical or inoperative.
The statutory development of ORS 118.100 and a related provision in ORS118.220 also supports this analysis.[11] Prior to 1997, ORS 118.220
specified a date of nine months after the date of death as the due date and ORS 118.100, as it does now, spoke only of the time at which "the federal estate tax is payable." The 1997 Oregon Legislature amended both statutes to read as they do now. Or Laws 1997, ch 99, §§ 8-9. The legislative history from that session indicates that legislators spent little attention on the changes and considered them mere housekeeping measures. That is understandable because in those years if no federal tax was payable, after application of the unified credit, no Oregon tax was payable. There is little if any doubt that the 1997 legislature had no intent to depart from the equation of "federal due date" and "nine months after death." *Page 13 
Nor is there any indication that in leaving ORS 118.100 and ORS 118.220
unchanged, the 2003 legislature intended to cancel out or substantively affect the actions it was otherwise taking in separating Oregon liability from federal liability.
C. Supremacy Clause Argument of Taxpayer
The final argument of taxpayer is based on taxpayer's view that the Federal Closing Document fixed the amount of state death tax credit at zero. Taxpayer then repeats its premise that ORS 118.010 fixes the Oregon inheritance tax liability at an amount equal to the state death tax credit allowed. Taxpayer's conclusion is that the amount of Oregon tax must therefore be zero and any result other in this court would constitute a violation of IRC section 7121, which states:
 "(a) Authorization.
 The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (ro iof the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.
 "(b) Finality.
 In such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact —
 (1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and
 (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."
A necessary premise in the logic of taxpayer is that ORS 118.010 links the Oregon inheritance tax liability to the amount of credit for state death tax that is ultimately included in the calculation of federal estate tax. The invalidity of that premise has been established above. The Oregon legislature has incorporated into ORS 118.010 "the maximum state death tax credit *Page 14 
allowable." That amount is determined by reference to IRC section 2011(b) and not by reference to amount of credit allowed.[12] With that premise invalid, the remainder of taxpayer's syllogism in this regard fails.
If, as established above, ORS 118.010 cannot be read as incorporating the amount of state death tax credit actually allowed in federal calculations, then actions of the auditor can have no relevance to the Oregon tax liability calculation. Nor can a federal statute authorizing those actions, insofar as the federal agent issued a closing agreement, have any relevance.[13] Nor can a statute describing the legal effect of such a closing agreement have any relevance. And finally, if the legal effect of the closing agreement is irrelevant, then disregarding the agreement and the related statute cannot be a violation of the Supremacy Clause of the Constitution of the United States. The Oregon statutes do not contradict the Federal Closing Document, or its authorizing statute, because they do not concern themselves with the substance of the Federal Closing Document.
Further, the action of the federal agent did not, in any way, purport to be a determination of the amount of the maximum death tax credit "allowable" under IRC section 2011, as it existed on December 31, 2000. It is to this source of law that the Oregon legislature has fastened chapter 118. The action of the agent was based on the IRC as it had been amended and was in effect as of December 31, 2002.[14] Nor does the closing agreement ever address the maximum amount of *Page 15 
credit "allowable," and that is the link adopted under ORS 118.010.[15]
The simple fact is that the Oregon legislature chose to refer to certain amounts defined in IRC 2011(b), as of 2000, and the action of the federal agent in this case represented a conclusion under IRC 2011(e), as of 2003. No conflict exists between Oregon law and any federal statute or authorized action of a federal agent. In such a situation, the ordering rule of the Supremacy Clause is not needed or applicable.
 V. CONCLUSION
Now, therefore,
IT IS ORDERED that the motion of Plaintiff is denied and the cross-motion of Defendant is granted.
Dated this ___ day of January 2010.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPT ON JANUARY 13,2010, AND FILED THE SAME DAY. THIS IS A PUBLISHED DOCUMENT.
[1] Unless otherwise noted, all references to the IRC are to the (2003) edition.
[2] Unless otherwise indicated, all references to the Oregon Revised Statutes (ORS) are to the 2003 edition. ORS 118.010(2) provides: "[t]he tax imposed under this section shall equal the maximum amount of the state death tax credit allowable against the federal estate tax under section 2011 of the Internal Revenue Code."
[3] ORS 118.100(1) provides, in relevant part: "[t]he tax provided for in ORS 118.010 shall be paid to the Department of Revenue on the date the federal estate tax is payable."
[4] ORS 118.007 provides in relevant part: "[a]ny reference in ORS118.005 to 118.840 to the Internal Revenue Code means the federal Internal Revenue Code as amended and in effect on December 31, 2000, except where the Legislative Assembly has specifically provided otherwise."
ORS 118.009 provides: "[t]he Legislative Assembly finds that significant recent changes have been made in federal estate tax laws. The Legislative Assembly further finds that an unintended consequence of these federal law changes has been to create difficulties in the administration and enforcement of the Oregon inheritance tax. The Legislative Assembly declares that ORS 118.007 and section 3, chapter 806, Oregon Laws 2003, and the amendments to ORS 118.010, 118.160 and 118.230
by sections 6, 7 and 8, chapter 806, Oregon Laws 2003, are needed to ensure that the level of tax compliance with the Oregon inheritance tax is at the level that Oregonians expect from a fair and balanced tax system."
[5] These changes were part of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub L No. 107-16. For both a detailed discussion of the federal legislation and the impact on the Oregon tax provisions, see Steven D. Nofziger, EGTRRA and the Past, Present, andFuture of Oregon's Inheritance Tax System, 84 Or L Rev 317 (2005).
[6] At the hearing on this matter, counsel for taxpayer admitted that the Oregon legislature did not intend such results but argued that those results nonetheless were required by the wording of the statutes, even after the 2003 amendments.
[7] Or a decision of a taxpayer to not take advantage of an allowance for which the taxpayer otherwise qualifies.
[8] It is to this "maximum" amount that the Oregon legislature has made specific reference.
[9] The 2007 Oregon Legislature adopted a set of provisions providing special exemptions from inheritance tax for certain amounts of value of farm, forest, and fishing property passing to family members. Or Laws 2007, ch 843.
[10] Taxpayer acknowledges that by reason of its election under IRC section 2032 A, additional federal tax could become payable by reason of changes in use or disposition of the farm property.
[11] ORS 118.220 provides that "[a]ll taxes imposed by ORS 118.005 to118.840 take effect at and accrue upon the death of the decedent, and are due and payable on the date the decedent's federal estate tax is due and payable, except as otherwise provided in ORS 118.005 to 118.840."
[12] The reason being that the amount of state death tax credit allowed can be determined only after application of the federal unified credit, a step that may reduce the maximum amount allowable to a smaller amount allowed.
[13] Taypayer also overlooks the fact that IRS section 7121(a) limits coverage of agreement to liability for federal taxes and does not purport to affect state tax obligations.
[14] This is clear from the notation in the closing agreement that there could, possibly, be either a credit or, for decedents dying after 2004, a deduction for state death taxes taken in the computation of federal liability. The possibility of a deduction for state death taxes only came into federal law by amendment to the IRC in 2001.
[15] Under ORS 118.100(2), if the agent takes action that redetermines the maximum amount allowable under IRC section 2011, the estate must report that to the department. There can then follow deficiency or refund proceedings. The record here contains no evidence that the federal agent made any such change. *Page 1